Giuseppe (Joseph) CUCUZZELLA,
Petitioner–Appellant,

v.

Edward N. KELIIKOA, United States
Marshall, and Edmund S. Muskie,* Sec-
retary of State, Respondents–Appellees.

No. 80–4149.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 13, 1980.

Jan. 30, 1981.

T. David Woo, Jr., Honolulu, Hawaii, for
petitioner–appellant.

Stephen D. Tom, Honolulu, Hawaii, for
respondents–appellees.

Before SKOPIL, FLETCHER and PREG-
ERSON, Circuit Judges.

SKOPIL, Circuit Judge:

### INTRODUCTION

Cucuzzella appeals the denial of his Peti-
tion for Writ of Habeas Corpus. Jurisdic-
tion for this appeal is based on 28 U.S.C.
§ 2253. We affirm.

### FACTS

In March 1976, in Vancouver, B.C., Cu-
cuzzella allegedly agreed to procure a mort-
gage for S. L. Scheves in return for an
$11,000 commission. He allegedly failed to
procure the mortgage or to refund Mr.
Scheves' deposits.

In July 1976, in Vancouver, Cucuzzella
allegedly entered into a similar agreement
with A. W. Deitcher. He represented that
he had obtained the mortgage, though he
had not.

The Canadian government charged Cu-
cuzzella with one count of theft and one

---

* The substitution of Secretary of State Edmund
S. Muskie for former Secretary of State Cyrus
R. Vance is effected by rule 43(c) of the Federal
Rules of Appellate Procedure.

count of criminal breach of trust for each transaction. Cucuzzella failed to appear for trial in Vancouver in March 1979.

In July 1979 the U.S. Attorney in Hawaii, on behalf of Canada, filed a complaint seeking Cucuzzella's arrest and extradition. In September 1979 the U.S. Attorney filed formal extradition documents.

The district court found the formal documents properly authenticated, found Cucuzzella a proper subject for extradition on all four counts, and certified his extradition to the Secretary of State.

Cucuzzella's Petition for Writ of Habeas Corpus was denied in March 1980. This appeal followed.

## ISSUES

On appeal Cucuzzella argues that Canada's documents were not properly authenticated pursuant to Article 10 of the 1971 Treaty of Extradition Between the United States and Canada and 18 U.S.C. § 3190, and that the criminal counts of breach of trust were not extraditable offenses under the treaty.

## DISCUSSION

### I. Authentication

█ Cucuzzella asserts that Canada's documents were improperly authenticated and therefore inadmissible. We disagree. Article 10 of the treaty provides in pertinent part:

"(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found ... to justify his committal for trial if the offense of which he is accused had been committed in its territory....

"(2) The documentary evidence in support of a request for extradition or copies

of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada...."

18 U.S.C. § 3190 provides:

"Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."

The facts as to authentication are undisputed. Our review is de novo.[1]

The documents, signed and sealed by Donald H. Christie, Associate Deputy Minister of Justice for Canada, were attested to be proper and authorized indictment, information, arrest warrants, and affidavits "admissible in evidence in Canadian Courts." The U.S. Ambassador certified the papers as "legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada."

The Canadian Certificate of Authenticity does not track the language of section 3190 mandating admission of documents that are "properly and legally authenticated" and admissible "for similar purposes" under the law of the requesting state. It does say that they would be "admissible in evidence

1. The admissibility question here is unlike that presented in *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). Here the question is whether the authentication of the

documents met the standard prescribed by the treaty and section 3190. This is a question of pure law. In *Hooker* the question was whether the defendant should have been permitted to present rebuttal evidence.

in Canadian Courts." The omissions are trivial, and there has been no showing of a lack of authenticity. The documents provided a sufficient basis for the U.S. Ambassador to certify their authenticity. *Shapiro v. Ferrandina*, 478 F.2d 894, 904 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). *See United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 728 (9th Cir. 1975); *United States v. Galanis*, 429 F.Supp. 1215, 1227–1229 (D.Conn.1977).

■ We must next determine whether the offenses for which extradition is sought are extraditable under Article 2 of the treaty. Article 2 provides in pertinent part:

"(1) Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty ... provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year."

Our inquiry is mandated by the "principle of specialty", recognized in international law, *see Shapiro*, 478 F.2d at 905–06, and incorporated into the instant treaty in Article 12. Article 12 provides in pertinent part:

"(1) A person extradited under the present Treaty shall not be detained,

tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted...."

Because the treaty prohibits punishment for an "offense" other than that for which a person is extradited and because two offenses have been alleged as to each act, we must look to the extraditability of each offense and not just each act. *Compare Shapiro*, 478 F.2d at 907, 909, *with Brauch v. Raiche*, 618 F.2d 843, 851 (1st Cir. 1980). Our review is *de novo*.[2]

■ To be extraditable Article 2 requires that each offense be "punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year." Cucuzzella contends that the "laws" refer to state law, in this case the law of Hawaii. We disagree.

Article 2 refers to "the laws of both Contracting Parties". The "Contracting Parties" are the United States and Canada. We therefore look to proscription by similar criminal provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states.[3]

There is no dispute as to the extraditability of the theft counts. We therefore review only the breach of trust counts. The relevant statute is Can.Rev.Stat. § 296, which provides:

**2.** This case is unlike *Hooker*, 573 F.2d at 1369, and *Sailer v. Gunn*, 548 F.2d 271, 275 (9th Cir. 1977), both of which employed a clearly erroneous standard but without explanation. In *Hooker, supra*, the questions involved the identity of the petitioner and the existence of probable cause to believe the crime was committed in Canada. In *Sailer, supra*, the question was the competence of the petitioner. Both questions call for findings of fact. There is no such question in this case.

**3.** *Brauch*, 618 F.2d at 851. Our decision is not inconsistent with *Pettit v. Walshe*, 194 U.S. 205, 217, 24 S.Ct. 657, 661, 48 L.Ed. 938 (1904). There the Supreme Court consulted state law because the treaty at issue demanded reference to the law of the place where the fugitive was found. The Court also ruled as it did because there [were] no common–law crimes of the

United States." The treaty at issue here, by contrast, commands reference to the laws of the "Contracting Parties". *See Shapiro*, 478 F.2d at 910 & n.18. *See also Brauch*, 618 F.2d at 849. In addition, federal criminal law is no longer nonexistent and state law no longer nonuniform. *Brauch*, 618 F.2d at 850. Moreover, our decision is fully consistent with the Court's view that the purpose of the analysis is only to ensure, at the outset, that the offense charged is "criminal in both jurisdictions". *Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922) (Brandeis, J.); *Shapiro*, 478 F.2d at 906 n.12; *Brauch, supra*. This broad interpretation also comports with the principle that treaties should be construed to enlarge the rights of the parties. *Factor v. Laubenheimer*, 290 U.S. 276, 293–294, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933); *Brauch, supra*.

"Every one who, being a trustee of anything for the use or benefit, whether in whole or in part, of another person, or for a public or charitable purpose, converts, with intent to defraud and in violation of his trust, that thing or any part of it to a use that is not authorized by the trust is guilty of an indictable offence and is liable to imprisonment for fourteen years."

Cucuzzella argues that there is no comparable federal offense. The crimes need not be identical.[4] We find the breach of trust statute analogous to federal embezzlement statutes. *See Jhirad v. Ferrandina*, 355 F.Supp. 1155, 1160 (S.D.N.Y.), *rev'd on other grounds*, 486 F.2d 442 (2d Cir. 1973). *Also compare* Can.Rev.Stat. § 296 *with* 4 W. Blackstone, *Commentaries*, *230, 231, *and* 18 U.S.C. §§ 671–665. 18 U.S.C. § 660 proscribes embezzlement from a common carrier moving in interstate commerce. Other statutes prohibit embezzlement of, or failure to account for, public funds. 18 U.S.C. §§ 641, 643. All such statutes provide prison terms of up to ten years for thefts of the amount at issue here. If Hawaii law were determined to govern, the comparable statute would be Hawaii Rev. Stat. § 708–830(6)(a) (Supp.1979). That offense constitutes first degree theft. Hawaii Rev.Stat. § 708–831(2) (Supp.1979) and carries a maximum five–year prison term. *See* Hawaii Rev.Stat. Commentary on §§ 708–830, 708–874 (1976). This too would satisfy Article 2 of the treaty. We conclude that the breach of trust counts constitute extraditable offenses.

The documents have been properly authenticated under both the treaty and section 3190. There are crimes in this country comparable to those charged in Canada against Cucuzzella. Those crimes are punishable by prison terms in excess of one year. The denial of the writ of habeas corpus is AFFIRMED.

---

4. *See Collins v. Loisel*, 259 U.S. at 312, 42 S.Ct. at 470. Article 2 of the treaty itself provides for some flexibility:

"Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed schedule ... is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense."

27 U.S.T. at 986, 997.