UNITED STATES of America, Appellee,

v.

**Ernest Henry WIEBE, Appellant.**

**Nos. 83–2431, 84–1166.**

United States Court of Appeals, Eighth Circuit.

Submitted April 30, 1984.

Decided May 3, 1984.

Rehearing and Rehearing En Banc Denied June 4, 1984.

**550**

James M. Rosenbaum, U.S. Atty., Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Alan W. Weinblatt, Leonard & Weinblatt, St. Paul, Minn., for appellant.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Ernest Henry Wiebe appeals from the district court's [1] denial of his petition for habeas corpus relief under 28 U.S.C. § 2241. Wiebe is a Canadian national charged by Spanish authorities with the murders of two Colombian nationals in the Province of Barcelona, Spain. A Spanish court issued a warrant for Wiebe's arrest on December 13, 1981, but he had already fled the country. On July 16, 1983, American authorities received an Interpol telex notifying them that Wiebe would be changing planes at the Minneapolis-St. Paul Airport. The United States Attorney's office obtained a provisional arrest warrant and had him arrested. *See* 18 U.S.C. § 3184.[2]

---

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

2. 18 U.S.C. § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the

A federal magistrate ordered Wiebe held without bond.

In accordance with article X of The Treaty on Extradition Between the United States of America and Spain, May 29, 1970, 22 U.S.T. 737, 742–43, T.I.A.S. No. 7136 (the Extradition Treaty),[3] the Embassy of Spain in Washington, D.C., submitted a diplomatic note to the State Department formally requesting Wiebe's extradition and providing assurances that complete documentation was forthcoming. Around July 29, 1983, the Spanish Foreign Ministry sent documents in support of its extradition request to the American Embassy in Madrid for authentication pursuant to 18 U.S.C. § 3190. On August 26, 1983, the American Embassy notified the State Department by telegram that the Foreign Ministry's note and documents had arrived on July 29, 1983, but the Embassy was unable to locate them. American Embassy officials contacted the Spanish Foreign Ministry to obtain a duplicate set of documents for authentication. The Spanish Foreign Ministry prepared another extradition request with appropriate supporting documents between August 26 and September 14, 1983. These documents were then certified by American consular officials as required by the Extradition Treaty and forwarded to the district court. On September 19, 1983, a United States attorney, acting on behalf of the Spanish Government, filed an unauthenticated copy of the new set of extradition documents with the district court. The following day, September 20, 1983, he filed the original authenticated translation.

On August 31, 1983, Wiebe filed his first petition for a writ of habeas corpus alleging that his detention was in violation of article I of the Supplementary Treaty on Extradition, January 25, 1975, United States—Spain, art. I, 29 U.S.T. 2283, 2285, T.I.A.S. No. 8938 (Supplementary Treaty). Article I provided in pertinent part:

> A person arrested upon such an application shall be set at liberty upon the expiration of 45 days from the date when the Embassy of the country seeking extradition is informed through diplomatic channels of the fact of this arrest if a request for his extradition accompanied by the documents specified in Article X shall not have been received. However, this stipulation shall not prevent the institution of proceedings with a view to extradition of the person sought if the request is subsequently received.

stipulation of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

**3.** Article X of the Extradition Treaty provides in pertinent part:

**ARTICLE X**

A. The request for extradition shall be made through the diplomatic channel.

B. The request shall be accompanied by:

1. A description of the person sought;

2. A statement of the facts of the case;

3. The text of the applicable laws of the requesting Party including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitations of the legal proceedings or the enforcement of the penalty for the offense. ....

D. When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting Party.

The requested Party may require the requesting Party to produce prima facie evidence to the effect that the person claimed has committed the offense for which extradition is requested. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded.

E. If a question arises regarding the identity of the person whose extradition is sought, evidence proving the person requested is the person to whom the warrant of arrest or sentence refers shall be submitted.

F. The documents which, according to this article, shall accompany the extradition request, shall be admitted in evidence when: In the case of a request emanating from Spain they bear the signature of a judge or other judicial or public official and are certified by the principal diplomatic or consular officer of the United States in Spain; ....

G. The documents mentioned in this article shall be accompanied by an official translation into the language of the requested Party which will be at the expense of the requesting Party.

Wiebe contended that the forty-five days expired no later than August 31, 1983. Because the district court had not received the documents specified by article X of the 1970 Treaty within the forty-five day period required by article I of the Supplementary Treaty, Wiebe argued that he was entitled to be set at liberty.

On September 6, 1983, the magistrate hearing the case recommended that the habeas writ issue and gave the government until September 16, 1983, to file its objections to the report and recommendation. The district court conducted a hearing on September 19, 1983, and found that the extradition documents were produced and received within the time constraints of the Supplementary Treaty. The court denied Wiebe's habeas corpus petition and referred the matter to the magistrate for further proceedings pursuant to 18 U.S.C. § 3184. Wiebe appealed. *Wiebe v. United States, appeal docketed*, No. 83–2431 (8th Cir. Oct. 25, 1983).

On November 17, 1983, an extradition hearing was conducted before a magistrate. The purpose of this hearing was to determine whether "there [was] reasonable ground to believe that the person whose extradition [was] sought [was] guilty, that is, whether there [was] sufficient evidence to justify extradition under the appropriate treaty." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir.1981). The only evidence adduced by the government at this hearing was the Spanish extradition request and its supporting documents. Wiebe testified and denied any culpability or involvement in the crimes with which he was charged. The magistrate concluded that probable cause existed to believe Wiebe had committed murder in Spain. Wiebe contested this finding before the district court in a second petition for habeas relief and renewed his claim that the proceedings against him were untimely. The district court denied the petition and Wiebe appealed. *Wiebe v. United States, appeal docketed*, No. 84–1166 (8th Cir. Jan. 31, 1984). The two appeals have been consolidated on the court's own motion.

For reversal Wiebe urges that (1) the magistrate and district court erred in finding probable cause, and (2) the district court erred in failing to issue a writ of habeas corpus because his arrest and detention violated the Constitution and the pertinent provisions of the Extradition Treaty and the Supplementary Treaty.

*Probable Cause*

■ "Because a finding of extraditability is not subject to direct appeal, collateral review is possible only through a writ of habeas corpus." *Hooker v. Klein*, 573 F.2d 1360, 1364 (9th Cir.) (citations omitted), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). The scope of review of an extradition order is narrower than that usually employed by an appellate court. *See In re Assarsson*, 687 F.2d 1157, 1159 (8th Cir.1982). As explained in *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925):

> [The petition for writ of habeas corpus] is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and habeas corpus is available only to inquire whether the magistrate has jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

Wiebe does not contest the magistrate's jurisdiction or deny that the offense charged is within the treaty. He contends only that the magistrate's determination of probable cause solely on the basis of the indictment report constituted error. Wiebe argues that 18 U.S.C. § 3184 contemplates an independent review of the evidence by a magistrate or district judge to determine whether that evidence meets the federal standard of "probable cause." According to Wiebe, the magistrate and district court did not conduct a de novo review of the evidence, but simply accepted without question the charges made by Spanish officials against him.

18 U.S.C. § 3184 provides that after an alleged fugitive from a foreign country is arrested, he must be brought before a judge or magistrate "to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention," he must certify the fugitive as extraditable to the Secretary of State. The extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested. *Collins v. Loisel*, 259 U.S. 309, 315, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922); *Gusikoff v. United States*, 620 F.2d 459, 462 (5th Cir.1980). *See Benson v. McMahon*, 127 U.S. 457, 462–63, 8 S.Ct. 1240, 1242–43, 32 L.Ed. 234 (1887).[4] The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C.Cir.1973). *See Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980); *Greci v. Birknes*, 527 F.2d 956, 959 (1st Cir.1976).

Contrary to Wiebe's assertion, the Spanish extradition documents offered into evidence at the extradition hearing were sufficient to support a finding of probable cause. *See, e.g., Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir.) (sole evidence introduced at extradition hearing to prove probable cause consisted of Mexican extradition documents), *cert. denied*, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980). 18 U.S.C. § 3190 provides that the extradition documents, properly authenticated and certified, are admissible evidence "for all the purposes of such [extradition] hearing." Similarly, article X of the Extra-

dition Treaty provides that the arrest warrant and the documents accompanying the request for extradition are admissible evidence. Wiebe concedes that the indictment report was admissible under 18 U.S.C. § 3190, but argues that because the indictment report was only a statement of charges, the magistrate erred in giving any weight to this evidence. This claim is without merit. It is well settled that a writ of habeas corpus may not double as a writ of error, and that ordinarily questions regarding the weight and sufficiency of the evidence presented at an extradition hearing simply are not reviewable in habeas corpus proceedings. *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

Moreover, the record does not support Wiebe's contentions that the magistrate failed to conduct an independent review of the evidence and merely "rubber stamped" the Spanish indictment. The transcript of the proceedings reveals that the magistrate was quite generous in permitting Wiebe to address the charges against him. Unfortunately, he presented no evidence, other than his own testimony, that would lead the magistrate to believe that the Spanish indictment was "manifestly ill-founded." *See* Extradition Treaty, art. X.D. ("The requested party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded."). The facts set forth in the Spanish indictment report were sufficient to support a finding of probable cause. Therefore, the magistrate did not err in relying on that document in making his probable cause determination.

*Unlawful Arrest and Detention*

Wiebe alleges that he was arrested in the absence of probable cause and held beyond the time permitted under article I of the Supplementary Treaty. A magistrate may issue a provisional arrest war-

---

**4.** Alibi evidence, facts contradicting the requesting country's proof, and defenses such as insanity, may properly be excluded at the extradition hearing. *Charlton v. Kelly*, 229 U.S. 447, 456, 33

S.Ct. 945, 947, 57 L.Ed. 1274 (1913); *Hooker v. Klein*, 573 F.2d at 1369; *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir.1973), *cert. denied*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973).

rant upon a showing in a sworn complaint of a treaty of extradition between the United States and any foreign country, and that the person sought committed in the foreign jurisdiction one of the crimes set forth in the treaty. 18 U.S.C. § 3184. The government filed a sworn complaint seeking Wiebe's arrest and extradition. The complaint alleged that Wiebe was wanted for murder in Spain and that murder was an extraditable offense under an extradition treaty between the United States and Spain. Weibe does not deny that the information contained in the complaint was correct. Therefore, the magistrate did not err in issuing a provisional arrest warrant.

 Wiebe also claims that because the extradition documents were not delivered to the United States within forty-five days after Spain was notified of his arrest as required by article I of the Supplementary Treaty, he is entitled to be set at liberty. We disagree. Extradition treaties are to be construed liberally to effect their purpose, *i.e.*, the surrender of fugitives to be tried for their alleged offenses. *Valentine v. United States ex rel. Heidecker*, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936). *See Factor v. Laubenheimer*, 290 U.S. 276, 293, 54 S.Ct. 191, 195, 78 L.Ed. 315 (1933). We agree with the reasoning set forth in *United States v. Clark*, 470 F.Supp. 976 (D.Vt.1979), and adopted by the district court, to hold that Spain had complied with the forty-five day requirement for filing the extradition documents. As indicated, the American Embassy received the extradition documents well within the forty-five day period set forth in the treaties, but these documents were lost and not replaced until after the forty-five days had run. The *Clark* court construed a forty-five day provision in an extradition treaty similar to the one in the case at bar as follows:

> We are satisfied, however, that the Treaty does not require receipt at the courts of the asylum country. If this were the case, the interests of the demanding country under the Treaty could consistently be undercut by bureaucratic sluggishness within the asylum country's executive agencies. The Treaty requires demands for extradition to be made through "the diplomatic channel" only, not directly to the courts of the asylum country.... We infer from this requirement and from the language quoted above that the purpose of the forty-five day provision is to protect the asylum country and respondents in its custody from custodial burdens and deprivations due to footdragging on the part of the demanding country. *See In re Chan Kam-Shu*, 477 F.2d 333, 339 (5th Cir. 1973). Whether subsequent delay within the government of the asylum country violates the rights of potential extraditees would at most be a question only of the asylum country's national law, and is not a sufficient basis, standing alone, on which to deny an extradition demand under the Treaty.

*United States v. Clark*, 470 F.Supp. at 979 (footnote omitted). In the present case, Spain, the demanding country, was not guilty of delay at any time. Indeed, the Spanish government fully complied with all treaty provisions within eleven days of Wiebe's arrest. Therefore, the district court did not err in denying the petition for habeas relief.

Accordingly, the judgment of the district court is affirmed.